**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

```
KATHRYN G. WHITAKER,           )
                               )
               Plaintiff,      )
                               )
     v.                        )        1:17CV313
                               )
NANCY A. BERRYHILL,            )
Acting Commissioner of Social  )
Security,                      )
                               )
               Defendant.      )
```

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Kathryn G. Whitaker, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 11, 18; see also Docket Entry 13 (Plaintiff's Memorandum); Docket Entry 19 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

**I.  PROCEDURAL HISTORY**

Plaintiff applied for DIB, alleging a disability onset date of May 30, 2003. (Tr. 288-92.) Upon denial of that application initially (Tr. 94, 135-38, 491-516) and on reconsideration (Tr. 95,

142-45, 481-90), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 146).  Plaintiff and her attorney attended the hearing.  (Tr. 27-45.)  The ALJ subsequently determined that Plaintiff did not qualify as disabled under the Act.  (Tr. 96-105.)  The Appeals Council thereafter remanded the case to the ALJ for correction of multiple legal errors (Tr. 106-11), and the ALJ held a second hearing, which Plaintiff, her attorney, and a vocational expert ("VE") attended (Tr. 46-65). Upon review, the Appeals Council again remanded the case based on legal errors (Tr. 131-34), and a new ALJ held a third hearing, which Plaintiff, her attorney, and a VE attended (Tr. 67-93).  The ALJ ruled Plaintiff not disabled (Tr. 7-20), after which the Appeals Council denied Plaintiff's request for review (Tr. 1-4, 5-6).  Plaintiff then sought judicial review in this Court, and the Court remanded the case based on the ALJ's failure to evaluate and weigh the opinions of Dr. Ajay K. Ajmani, Whitaker v. Colvin, No. 1:13CV423, 2015 WL 9274932, at *4-7 (M.D.N.C. Dec. 18, 2015) (unpublished), recommendation adopted, slip op. (M.D.N.C. Jan. 26, 2016) (Beaty, S.J.).

A new ALJ held a fourth hearing, which Plaintiff, her attorney, and a VE attended (Tr. 770-90), and thereafter issued an unfavorable decision denying Plaintiff benefits (Tr. 746-62).  In light of this Court's prior remand, "Plaintiff exercised her right

to appeal the ALJ's decision directly to this [C]ourt." (Docket Entry 13 at 3.)

In rendering that decision, the ALJ made the following findings:

1. [Plaintiff] last met the insured status requirements of the . . . Act on December 31, 2008.

2. [Plaintiff] did not engage in substantial gainful activity during the period from her alleged onset date of May 30, 2003 through her date last insured of December 31, 2008.

3. Through the date last insured, [Plaintiff] had the following severe impairments: bilateral carpal tunnel syndrome, status post releases; lumbago; arthritis of the left shoulder, with widening of the left acromioclavicular (AC) joint; obesity; depressive disorder, recurrent, moderate; and anxiety disorder.

. . .

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work . . . except she was allowed to alternate sitting or standing positions at approximately 20-minute intervals, while remaining on task at the work station. [Plaintiff] could never climb ladders, ropes, or scaffolds; occasionally climb ramps or stairs; and occasionally balance, stoop, kneel, crouch, or crawl. She could occasionally reach overhead with the left, non-dominant upper extremity; and frequent[ly] perform gross and fine manipulations bilaterally. [Plaintiff] must . . . have avoided concentrated exposure to extreme cold and extreme heat; avoided all exposure to excessive vibration; and avoided all exposure to hazardous machinery and unprotected heights. Her work was limited to simple and

routine tasks; only occasional changes in the work
setting; occasional interaction with the public and
coworkers; and occasional, over-the-shoulder supervision.

. . .

6. Through the date last insured, [Plaintiff] was
unable to perform any past relevant work.

. . .

10. Through the date last insured, considering
[Plaintiff's] age, education, work experience, and
residual functional capacity, there were jobs that
existed in significant numbers in the national economy
that [Plaintiff] could have performed.

. . .

11. [Plaintiff] was not under a disability, as defined
in the . . . Act, at any time from May 30, 2003, the
alleged onset date, through December 31, 2008, the date
last insured.

(Tr. 751-61 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security
Commissioner's denial of social security benefits." Hines v.
Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope
of . . . review of [such a] decision . . . is extremely limited."
Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Plaintiff has
not established entitlement to relief under the extremely limited
review standard.

## A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."
Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a
reviewing court must uphold the factual findings of the ALJ
[underlying the denial of benefits] if they are supported by
substantial evidence and were reached through application of the
correct legal standard."  Hines, 453 F.3d at 561 (internal brackets
and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion.'"
Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting
Richardson v. Perales, 402 U.S. 389, 390 (1971)).  "It consists of
more than a mere scintilla of evidence but may be somewhat less
than a preponderance."  Mastro v. Apfel, 270 F.3d 171, 176 (4th
Cir. 2001) (internal brackets and quotation marks omitted).  "If
there is evidence to justify a refusal to direct a verdict were the
case before a jury, then there is substantial evidence."  Hunter,
993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not
undertake to re-weigh conflicting evidence, make credibility
determinations, or substitute its judgment for that of the [ALJ, as
adopted by the Social Security Commissioner]."  Mastro, 270 F.3d at
176 (internal brackets and quotation marks omitted).  "Where
conflicting evidence allows reasonable minds to differ as to

whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a

_____

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro,

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

7

7

270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

## B.  Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ failed to follow this Court's 2016 remand order and properly evaluate Dr. Ajmani's opinion[s]" (Docket Entry 13 at 5 (bold font and single-spacing omitted));

2) "[t]he ALJ erred by finding that the testimony of the VE supported [the ALJ's] finding at [s]tep [f]ive of the SEP" (id. at 8 (bold font and single-spacing omitted)); and

3) "[t]he ALJ's RFC is not supported by substantial evidence" (id. at 9 (bold font omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (Docket Entry 19 at 4-18.)

### 1.  Evaluation of Dr. Ajmani's Opinions

In Plaintiff's first issue on review, she claims that "[t]he ALJ failed to follow this Court's 2016 remand order and properly evaluate Dr. Ajmani's medical opinion[s]."  (Docket Entry 13 at 5

---

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five.  Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis.  See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

(bold font and single-spacing omitted).)  In particular, Plaintiff

faults the ALJ for "not adopt[ing] Dr. Ajmani's lifting restriction

to no more than 10 pounds of lifting per hour with a few exceptions

in an 8-hour day on the premise that it was 'vaguely worded'" (id.

at 6 (quoting Tr. 759)) because, in its prior remand, "this Court

specifically noted that Dr. Ajmani's lifting restrictions were not

too vague and thus the ALJ erred by assigning them less weight

th[a]n other parts of the opinion on this basis" (id. at 7 (citing

Whitaker, 2015 WL 9274932, at *5)).  According to Plaintiff, the

ALJ's error in this regard prejudiced her, because Dr. Ajmani's

"lifting restrictions are inconsistent with light work" (id.), and

because "the VE testified that if [Plaintiff] were limited to

sedentary exertion when combined with the other limitations that

are in the RFC and only occasional pushing and pulling with the

upper and lower extremities . . ., then she would be unemployable"

(id. (citing Tr. 786-87)).  Plaintiff maintains that, because her

"case has been the subject of four ALJ hearings . . . and the fact

that her [date last insured ('DLI')] passed [nine] years ago . . .,

reversal for an award of benefits is appropriate." (Id. at 7-8

(citing Breeden v. Weinberger, 493 F.2d 1002, 1011 (4th Cir. 1974),

and Braxton v. Colvin, No. 1:12CV1232, 2015 WL 1097333, at 86

(M.D.N.C. Mar. 11, 2015) (unpublished)).)  Plaintiff's contentions

do not warrant relief.

Dr. Ajmani evaluated Plaintiff for "all over pain" on April 1, 2009 (Tr. 563; see also Tr. 566-67) and on April 6, 2009 (see Tr. 564-65), and then drafted a "[t]o whom it may concern" letter on April 8, 2009, in which he assessed Plaintiff with carpal tunnel syndrome ("CTS"), compression arthralgia of the ulna/radius/wrist, rotator cuff damage in the left shoulder, hypertension, coronary artery disease with heart murmur, morbid obesity, degenerative disease, depression, and chronic low back pain (Tr. 559-60). Dr. Ajmani opined that Plaintiff should lift or pull greater than ten pounds only a "few exceptional" times an hour in an eight-hour work day, "ha[d] difficulty standing/sitting and walking for longer than a 30[-]minute time span," but could better tolerate "rotating in these positions," could occasionally stoop, kneel, crouch, and crawl, could never climb ladders, ropes, or scaffolds, and should avoid "extreme cold" and "[m]oderate exposure" to "extreme heat, vibrations and fumes, gases, [and] poor ventilation." (Tr. 559.) Dr. Ajmani further stated that "[m]anipulative limitations predominately are unlimited to the right shoulder but the left shoulder and bilateral hands with increased grasping, reaching over head and sensation are deficient." (Id.)

The ALJ summarized Dr. Ajmani's opinions and then assessed and weighed them as follows:

> Although this opinion was offered more than three months
> after the [DLI], many of the limitations opined are
> supported by the symptoms [sic] supported by the

11

objective clinical and diagnostic findings prior to the alleged onset date. The language regarding lifting is vaguely worded, as "a few exceptional limitations" is not defined. The mild spinal findings do not significantly affect [Plaintiff's] lifting, but the combined effect of her obesity and the objective clinical and diagnostic findings relating to her left shoulder impairment, history of bilateral carpal tunnel syndrome considered in light of her pain warranted a range of light exertion through the [DLI]. She could lift/carry 10 pounds frequently and 20 pounds occasionally in an eight hour workday. Based on her reports to her providers, she was allowed to alternate sitting or standing positions at approximately 20-minute intervals, while remaining on task at the workstation. The combined effect of [Plaintiff's] impairments precluded climbing, ladders, ropes or scaffolds, and all other postural activities could be performed no more than occasionally. The manipulative limitations are also vaguely worded, but based on the findings throughout the majority of the record prior to the [DLI], [Plaintiff] could occasionally reach overhead with the left, non-dominant upper extremity; and frequent[ly] perform gross and fine manipulations bilaterally. The environmental limitations are also generally supported by the record, aside from there being no basis for limitations with regard to pulmonary irritants. [Plaintiff] must . . . have avoided concentrated exposure to extreme cold and extreme heat; avoided all exposure to excessive vibration; and avoided all exposure to hazardous machinery and unprotected heights. Dr. Ajmani additionally noted that pushing/ pulling by her hands and feet could increase in [sic] numbness, tingling or pain. While this might be true, an increase in these symptoms does not mean that pushing/pulling are precluded or even limited, and no specific limitations were opined. Based on this analysis, the opinion of Dr. Ajmani is given considerable weight.

(Tr. 759 (emphasis added).)

Out of the ALJ's lengthy discussion quoted above, Plaintiff zeroes in on the ALJ's decision to discount Dr. Ajmani's lifting restriction as "vaguely worded" (id.), arguing that this Court

"rejected that very same argument when it directed remand for proper weight of Dr. Ajmani's opinion[s]" (Docket Entry 13 at 6 (citing <u>Whitaker</u>, 2015 WL 9274932, at *5)). However, examination of both the language and the context of the Court's prior decision demonstrates that Plaintiff's argument lacks merit.

On the prior occasion the Court considered Plaintiff's case on judicial review, the Commissioner argued that the ALJ's failure to expressly discuss and weigh Dr. Ajmani's opinions constituted harmless error, because Dr. Ajmani's statements regarding Plaintiff's manipulative limitations qualified as "'too vague to lend any insight into the doctor's opinions as to [claimant's] specific abilities'" and did not constitute a "medical opinion within the meaning of the governing regulation." <u>Whitaker v. Colvin</u>, No. 1:13CV423 (M.D.N.C.), Docket Entry 13 at 4 (quoting <u>Bruce v. Commissioner of Soc. Sec.</u>, No. 10-CV-10426, 2010 WL 5932326, at 8* (E.D. Mich. Dec. 9, 2010) (unpublished), <u>recommendation adopted</u>, 2011 WL 833792 (E.D. Mich. Mar. 4, 2011) (unpublished)). In response to that argument, the undersigned United States Magistrate Judge reasoned as follows:

> Even if the Court agreed with the Commissioner that Dr. Ajmani's statement regarding Plaintiff's manipulative limitations remains too vague to constitute a "medical opinion" within the meaning of the regulations, Dr. Ajmani's letter contains many other, <u>more specific</u> limitations regarding Plaintiff's ability to perform work-related functions, such as a significant restriction on "lifting/pulling greater than 10 pounds/hr in an 8 hr day," a limitation to occasional postural movements, and

a 30-minute cap on sitting, standing, and walking at one
time (Tr. 559). These opinions fall squarely within the
above-quoted definition of "medical opinion" and thus the
ALJ erred by failing to discuss and weigh them.

Whitaker, 2015 WL 9274932, at *5 (internal citation omitted)
(emphasis added).

Plaintiff maintains that the above-quoted analysis means that
"the Court found that Dr. Ajmani's lifting restriction w[as] both
'specific' and 'work-related.'" (Docket Entry 13 at 6.)  However,
Plaintiff's argument overemphasizes the significance of the word
"specific," while glossing over both its modifier "more" and its
context.  The undersigned merely found Dr. Ajmani's lifting
restriction more specific than his manipulative limitations, and
specific enough to qualify as a medical opinion under the
regulations.  See Whitaker, 2015 WL 9274932, at *5.  However, in so
finding, the undersigned made no broader finding that Dr. Ajmani's
lifting restrictions did not qualify as vague in any context, or
prohibiting the ALJ on remand from finding those restrictions
vague.

In sum, the ALJ's finding that Dr. Ajmani's statement that he
"would place a few exceptional limitations" on Plaintiff regarding
lifting or pulling more than 10 pounds per hour in an eight-hour
workday (Tr. 559) qualified as "not defined" and "vaguely worded"
(Tr. 759) does not contravene the Court's prior remand order.
Moreover, the ALJ further explained why he rejected Dr. Ajmani's

14

lifting restrictions, i.e., that "the combined effect of [Plaintiff's] obesity and the objective clinical and diagnostic findings relating to her left shoulder impairment, history of bilateral carpal tunnel syndrome considered in light of her pain warranted a range of light exertion through the [DLI]." (Tr. 759.) Under such circumstances, Plaintiff has shown a basis for neither reversal nor remand.

## 2. Sit/Stand Option

Next, Plaintiff contends that "[t]he ALJ erred by finding that the testimony of the VE supported [the ALJ's] finding at [s]tep [f]ive of the SEP." (Docket Entry 13 at 8 (bold font and single-spacing omitted).) More specifically, Plaintiff maintains that, "[i]n the RFC, the ALJ determined that [Plaintiff] must be 'allowed to alternate sitting or standing positions at approximately 20-minute intervals, while remaining on task at the work station'" (id. (quoting Tr. 754)), but that the VE's testimony in response to the corresponding hypothetical question "would seem to indicate that [Plaintiff] could not stay on task with the[] jobs [the VE cited] while standing every other 20 minutes, but rather would need to be sitting an hour or two at a time and could just stretch quickly every 20 minutes and then continue working while sitting at her workstation" (id. at 9 (referencing Tr. 788)). According to Plaintiff, "[b]ecause this issue is outcome determinative, this ambiguity needs to be clarified upon remand." (Id. (citing Harvey

15

v. Berryhill, No. 1:16CV574, 2017 WL 943946, at *4-5 (M.D.N.C. Mar. 9, 2017) (unpublished) (Auld, M.J.), recommendation adopted, slip op. (M.D.N.C. May 23, 2017) (Biggs, J.).) Plaintiff's contention falls short.

In the ALJ's dispositive hypothetical question, the ALJ asked the VE to cite jobs available in significant numbers in the national economy for an individual with Plaintiff's RFC, which included the "need to be allowed to alternate sitting or standing positions at . . . approximate 20-minute intervals . . . but would remain on task or at the work station during those intervals." (Tr. 784; see also Tr. 754 (portion of ALJ's decision setting out Plaintiff's RFC).) In response, the following exchange took place between the VE and the ALJ:

> VE:      [A]s far as the sitting and standing at the
>          20-minute intervals, how long would they have
>          to stand . . . or sit alternatively?  I mean
>          is it just get up and stretch a little bit and
>          go right back down as far as sitting –
>
> ALJ:     Well yeah.  She would remain at the
>          workstation, wouldn't be away from the
>          workstation, wouldn't be off task due to it.

(Tr. 785 (emphasis added).)  The VE then cited the jobs of inspector/handpackager, production solderer, and electronics worker as available to Plaintiff.  (See Tr. 785-86.)

On cross-examination, the following discussion occurred between Plaintiff's attorney and the VE:

```
ATTY:        And just so I understand the sit-stand option,
             if the sit-stand option is such that the
             hypothetical individual is sitting for 20
             minutes and standing for 20 minutes and
             sitting for 20 minutes and standing for 20
             minutes, would that hypothetical individual be
             able to do those jobs that you identified?

VE:          I don't think they would be.  What I was
             looking at is I have to change position, get
             up stretch, and then essentially go back down
             and . . . work.  These jobs are . . .
             typically done . . . in a seated position, and
             they're really only listed as light duty
             because of the production aspects of the job
             rather than the weights or the . . . walking
             or standing . . . tolerances with that.  But
             you're going to have to be able to be in that
             one position an hour or two at a time, and
             . . . that position's going to be a seated
             position, typically.  . . . You . . . can get
             up in that 20-minute interval and . . .
             stretch and whatever and then go right back to
             the workstation.  But at a frequency level at
             20 minutes, you're just not going to be able
             to get anything done if you have to change and
             reposition yourself at another workstation.
```

(Tr. 787-88.)  The ALJ later adopted VE's testimony in denying

Plaintiff's claim at step five of the SEP.  (See Tr. 761.)

Contrary to Plaintiff's argument (see Docket Entry 13 at 8-9),

the VE's testimony reveals no "ambiguity" that the ALJ must

"clarif[y] upon remand" (id. at 9).  The ALJ's initial inclusion in

the hypothetical of an "allow[ance] to alternate sitting or

standing positions at . . . approximate 20-minute intervals . . .

[while] remain[ing] on task or at the work station during those

intervals" (Tr. 784) could have represented a requirement that

Plaintiff sit for 20 minutes and then alternately stand for 20

17

minutes at her workstation throughout the workday.  However, the above-quoted exchange between the VE and the ALJ made clear that the ALJ intended a more narrow requirement allowing Plaintiff, approximately every 20 minutes, to "just get up and stretch a little bit and go right back down as far as sitting" while "remain[ing] at the workstation" and on task.  (Tr. 785.)  In response to Plaintiff's attorney during cross-examination, the VE indicated that Plaintiff could not sit for 20 minutes and then stand for 20 minutes alternately while performing the jobs in question, because to do so would require her to "reposition [he]rself at another workstation" during the standing intervals. (Tr. 788 (emphasis added).)  Accordingly, when the ALJ later determined the RFC, he used the same language as he had included in the hypothetical, i.e., an "allow[ance] to alternate sitting or standing positions at approximately 20-minute intervals, while remaining on task at the work station."  (Tr. 754 (emphasis added).)

In short, no ambiguity in the VE's testimony exists that would require clarification upon remand.

### 3. RFC

Lastly, Plaintiff asserts that "[t]he ALJ's RFC is not supported by substantial evidence."  (Docket Entry 13 at 9 (bold font and single-spacing omitted).)  More particularly, Plaintiff faults the ALJ for "reasoning that[,] while [Plaintiff's]

functioning was worse before her CTS surgeries and right after the DLI, during the interim, she experienced improvement in her pain and return of her sensation, and thus, was not disabled for a full 12 months." (Id. (citing Tr. 756).) In that regard, Plaintiff maintains that the ALJ improperly "trifurcate[d] [Plaintiff's] conditions into three time periods[,] admitting [that] she [was] doing poorly with her upper extremities during the first and third periods but finding that[,] because she was doing relatively better in the second period, she did not suffer from disabling conditions." (Id. at 11.) According to Plaintiff, and contrary to the ALJ's decision, "[t]he record . . . reveals that [Plaintiff's] condition was much the same after her [bilateral carpal tunnel release] surgeries [in March 2007] as it was before." (Id. at 10.) Plaintiff further points out that "[t]he VE at the first hearing testified that if [Plaintiff] was only able to use her hands occasionally as she testified then there would be no jobs she could perform" (id. at 12 (citing Tr. 91 )) and that, therefore, "the ALJ's decision should be reversed" (id.). Those arguments do not establish a basis for relief.

As an initial matter, Plaintiff distorts the ALJ's reasoning by claiming he found that, in between Plaintiff's carpal tunnel release surgeries in March 2007 and her DLI in December 2008, "she experienced improvement in her pain and return of her sensation, and thus, was not disabled for a full 12 months." (Id. at 9

19

(emphasis added) (citing Tr. 756).)   Plaintiff's interpretation

would suggest that the ALJ found that Plaintiff met the criteria

(other than the duration requirement) for <u>disability</u> prior to her

carpal tunnel release surgeries and after her DLI, but not during

a period of temporary improvement in her symptoms in between those

two points.   However, the ALJ actually reasoned that "[o]bjective

findings of record established that there was no continuous 12-

month period from the alleged onset date through the [DLI] during

which [Plaintiff] was precluded from <u>performing the [RFC]</u>."   (Tr.

755 (emphasis added).)[5]

Moreover, the ALJ supported with substantial evidence his

finding that no continuous 12-month period existed during the

relevant period in this case in which Plaintiff remained unable to

perform the RFC, including by making the following observations:

- Although Plaintiff reported numbness and pain in
  her wrists, limited wrist motion, and decreased
  grip strength from May 2004 until March 2005, in
  April 2005, Plaintiff "reported less pain [and]
  more mobility," in June 2005, "that her[] wrists
  were so much better and that she was not having any

---

[5] The fact that the ALJ did <u>not</u> find that Plaintiff met the criteria for
disability prior to her carpal tunnel release surgeries and after her DLI also
demonstrates why Plaintiff's reliance on 20 C.F.R. § 404.1594(c)(3)(iv) misses
the mark.   (<u>See</u> Docket Entry 13 at 12.)   Section 404.1594(c)(3)(iv) provides
that, when "the evidence shows that an individual's impairments are subject to
temporary remission[,] <u>[i]n assessing whether medical improvement has occurred</u>
. . ., we will be careful to consider the longitudinal history of the
impairments, . . . [and] [i]mprovement in such impairments that is only temporary
will not warrant a finding of medical improvement."     20 C.F.R.
§ 404.1594(c)(3)(iv) (emphasis added).   Thus, this section governs the standards
for determining when a claimant, <u>who has already qualified as disabled</u>, no longer
qualifies due to medical improvement and simply does not apply to the ALJ's
reasoning here.

pain," and in July 2005, "that her pain was markedly improved" and that her "pain was managed with Ibuprofen" (Tr. 755 (internal quotation marks omitted));

- Although Plaintiff reported worsening CTS symptoms in May 2006, "had grip strength of 2/5 on the right and 3/5 on the left" in August 2006 (id.), and "[p]oor fine motor movements and decreased strength were noted in the bilateral hands" in October 2006 (Tr. 756), following carpal tunnel release surgeries in March 2007, "her sensation had returned" but "she still reported weakness and decreased grip strength" (id.);

- "At a July 2007 vocational evaluation, Plaintiff again reported improvement in numbness," and although "she complained of constant pain[,] . . . [and] difficulty with fine and gross manipulation[,] . . . there were no objective findings to support th[o]se alleged symptoms" (id.); and

- Examinations from January through March 2008 revealed . . . strength was full . . ., including her upper extremities," and Plaintiff "reported in July 2008 that pain had decreased in her wrists" (id.).

Notably, Plaintiff does not contest the accuracy of any of the above-quoted observations by the ALJ (see Docket Entry 13 at 9-12), but rather describes medical findings and her own subjective complaints of symptoms regarding her upper extremity impairments that she believes show she suffered greater limitations than found by the ALJ in the RFC (see id. at 10-12). However, Plaintiff misinterprets this Court's standard of review. The Court must determine whether substantial evidence, defined as "more than a mere scintilla of evidence but may be somewhat less than a

preponderance," <u>Mastro</u>, 270 F.3d at 176 (brackets and internal quotation marks omitted), supported the ALJ's findings and not whether other record evidence weighed against the ALJ's findings, <u>see</u> <u>Lanier v. Colvin</u>, No. CV414-004, 2015 WL 3622619, at *1 (S.D. Ga. June 9, 2015) (unpublished) ("The fact that [the p]laintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence.").

Simply put, the ALJ provided substantial evidence to support his analysis of the impact of Plaintiff's upper extremity impairments on the RFC.

## CONCLUSION

Plaintiff has not established an error warranting remand.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 11) be denied, and Defendant's Motion for Judgment on the Pleadings (Docket Entry 18) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

September 18, 2018